IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

FEB 09 2016

DOUGLAS F. YOUNG, Clerk
By _____ Deputy Clerk

UNITED STATES OF AMERICA                                    PLAINTIFF

V.                           CASE NO. 5:15-cr-50077

FRANCISCO SANCHEZ                                           DEFENDANT

### MEMORANDUM OPINION AND ORDER

Currently before the Court are the Defendant Francisco Sanchez's Motion to Suppress (Doc. 29) and Second Motion to Suppress (Doc. 43), along with the Government's Response (Doc. 42). The Court held an Evidentiary Hearing on February 4, 2016, and **DENIED** the Motions to Suppress from the bench. This Order further explains the Court's reasoning, and to the extent that anything in the Order contradicts the Court's statements from the bench, this Order controls.

### I.   BACKGROUND

In the fall of 2014, the Benton County Sheriff's Office ("BCSO") and the Drug Enforcement Agency ("DEA") began to investigate a suspected drug trafficking organization in Northwest Arkansas. As part of this investigation, the BCSO arranged, and the DEA funded, a controlled purchase of methamphetamine. Specifically, Detective Miguel Cordova, acting in an undercover capacity, contacted Francisco Sanchez and arranged to purchase one ounce of methamphetamine from him. On November 26, 2014, Detective Cordova waited for Sanchez in the parking lot of a McDonald's restaurant in Bentonville, Arkansas to execute the transaction. Meanwhile,

BCSO officers—including BCSO Sergeant Charles Robbins and Detective Joe Adams—maintained surveillance on the area. A silver Acura with the license plate "SK1LLG" arrived shortly at McDonald's, and the driver instructed Detective Cordova to drive to a different location to complete the transaction. As the Acura drove past Sergeant Robbins with its passenger window rolled down, he was able to identify Sanchez as the driver of the vehicle.

Next, Detective Cordova followed Sanchez to a different location and completed the transaction. The surveilling officers, including Sergeant Robbins and Detective Adams, were unable to physically witness the exchange. Detective Cordova then returned to his vehicle and began debriefing law enforcement officers over the radio. He later debriefed several officers in person, including Sergeant Robbins and Detective Adams. Sergeant Robbins was also able to review the content of an audio listening device that Detective Cordova was equipped with during the transaction. In short, Sergeant Robbins, Detective Adams, and the other BCSO officers had no cause to reasonably doubt the fact that Detective Cordova had just purchased an ounce of methamphetamine from Sanchez, despite none of them having witnessed the transaction with their own eyes.

In January of 2015, the BCSO learned that Detective Cordova had been engaging in inappropriate communication, and possibly inappropriate physical contact, with a female confidential informant ("CI"). The subject-matter of the communication is unnecessary to reveal here, except to state that it did not pertain to falsifying undercover drug transactions or anything of the like. BCSO Captain Kenneth Paul subsequently conducted an internal investigation into the matter. During the

investigation, Detective Cordova initially denied the accusations, but then admitted to some of them after Captain Paul confronted him with evidence. He resigned from the BCSO after admitting to the misconduct, on January 9, 2015. Cordova's resignation, and perhaps other factors, caused the BCSO's and DEA's drug investigation to shift focus from Sanchez to other members of the suspected drug trafficking organization.

And so it remained until the fall of 2015, when the BCSO received a tip from a reliable CI that Sanchez was in possession of a large quantity of methamphetamine and a handgun. Acting on this information, a team of BCSO officers including Sergeant Robbins and Detective Adams located Sanchez in his Silver Acura with the "SK1LLG" license plate on October 13, 2015. After tailing Sanchez for some amount of time, Sergeant Robbins temporarily lost track of Sanchez's vehicle when he turned left at a traffic light at which Sanchez was stopped. A short time later, Sanchez was located washing his vehicle at a car wash.

Relying on probable cause to arrest based on his involvement in the November 26, 2014 controlled purchase of methamphetamine, Sergeant Robbins ordered specially trained officers to move in and arrest Sanchez. Sanchez, standing outside of his vehicle at the time, cooperated with law enforcement's verbal instructions and was arrested. At the same time, police detained a passenger who was travelling with Sanchez in his vehicle, and then arrested him after he admitted to having methamphetamine and a meth pipe on his person. Within a minute or two, a trained K-9 handler and his K-9 conducted an open-air sniff of Sanchez's vehicle. The K-9 alerted to the presence of narcotics, and BCSO officers conducted a search of the vehicle. The search revealed a large quantity of methamphetamine and a firearm that had been reported stolen.

Sanchez now seeks to have the seized evidence suppressed, contending that his warrantless arrest was made without probable cause, and that evidence discovered by the resulting search constitutes fruit of that unconstitutional arrest. Alternatively, Sanchez argues that even if his arrest was made on probable cause, the resulting search violated the Fourth Amendment, because law enforcement did not obtain a warrant prior to searching the vehicle. For the reasons explained below, the Court rejects both contentions.

## II.   LEGAL STANDARD

The Fourth Amendment to the Constitution ensures that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. A careful examination of the text of the Amendment reveals that obtaining a warrant is not a constitutional prerequisite to all searches and seizures. Rather, reasonability is the standard upon which the constitutionality of searches and seizures are judged. *See Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) (stating that "the ultimate touchstone of the Fourth Amendment is reasonableness" (internal quotation marks omitted)). Accordingly, while "reasonableness generally requires the obtaining of a judicial warrant" the Supreme Court has recognized several exceptions to this warrant preference. *Riley v. California*, 134 S. Ct. 2473, 2482 (2014) (quoting *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995)). Thus, police officers may conduct the warrantless arrest of a suspect on probable cause of a felony, *United States v. Watson*,

423 U.S. 411 (1976), the warrantless search of a vehicle on probable cause that it contains contraband, *Carroll v. United States*, 267 U.S. 132 (1925), or, in certain circumstances, the warrantless search of a vehicle incident to a recent occupant's arrest, *Arizona v. Gant*, 556 U.S. 332 (2009).

Where a warrantless search or arrest is challenged, the burden of proof is on the government to justify it. *See Carter v. United States*, 729 F.2d 935, 940 (8th Cir. 1984); *United States v. Skinner*, 412 F.2d 98, 103 (8th Cir. 1969); 6 Search & Seizure § 11.2(b) (5th ed.) ("[M]ost states follow the rule utilized in the federal courts: if the search or seizure was pursuant to a warrant, the defendant has the burden of proof; but if the police acted without a warrant the burden of proof is on the prosecution."). The standard of proof that applies to the government is proof by a preponderance of the evidence. *E.g., Lego v. Twomey*, 404 U.S. 477, 488-89 (1972); *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974) ("[T]he controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence."). The main question facing this Court, then, is whether the Government has proven by a preponderance of the evidence that law enforcement's warrantless arrest of Sanchez and search of his vehicle were justified by an exception to the Fourth Amendment's preference for a warrant.

### III.  DISCUSSION

The Court finds that both Sanchez's arrest and the search of his vehicle conformed to the requirements of the Fourth Amendment. First, the arresting officers had probable cause to arrest Sanchez on October 13, 2015. "Probable cause exists if the facts and circumstances within the arresting officer's knowledge were sufficient to

5

warrant a prudent person's belief that the suspect *had committed* or *was committing* an offense." *United States v. Cabrera-Reynoso*, 195 F.3d 1029, 1031 (8th Cir. 1999) (emphasis added) (quoting *United States v. Magness,* 69 F.3d 872, 874 (8th Cir. 1995)). Both Sergeant Robbins and Detective Adams had probable cause to arrest Sanchez stemming from their involvement in the November 26, 2014 controlled purchase.[1] On that date, both officers undoubtedly had probable cause to believe that Sanchez committed a felony by selling methamphetamine to Detective Cordova. Importantly, while Cordova's unrelated misconduct was reprehensible, it did not undermine the validity of that belief—it supplied no reason to doubt that Sanchez sold methamphetamine to Cordova.

Nor did the substantial passage of time between the controlled purchase and the arrest negate the officers' basis for probable cause. The Eighth Circuit has noted that "where continuing criminal activity is suspected, the passage of time is less significant" in establishing probable cause to acquire a search warrant. *United States v. Formaro*, 152 F.3d 768, 771 (8th Cir. 1998). This is especially so in investigations of ongoing narcotics operations. *See United States v. Ortiz*, 114 F.3d 728, 732-33 (2nd Cir. 1998). The passage of time is even less significant in the context of probable cause to arrest, as compared to probable cause to obtain a search warrant. To obtain a search warrant, law enforcement needs to show probable cause that the fruits, instrumentalities, or evidence of a crime will be found in the place to be searched. *E.g., United States v.*

---

[1] Their probable cause was also imputed onto the other officers involved in Sanchez's arrest via the collective knowledge doctrine. *E.g., United States v. Gonzales*, 220 F.3d 922, 925 (8th Cir. 2000). However, the Court does not consider application of the collective knowledge doctrine necessary to sustain the constitutionality of the arrest and search in this case, since Sergeant Robbins gave the order to arrest, was present for the arrest, and had a first-hand basis for probable cause.

*Jeanetta*, 533 F.3d 651, 654 (8th Cir. 2008). A substantial passage of time generally diminishes the likelihood that such items will be present in the place to be searched. To execute an arrest, on the other hand, law enforcement needs to demonstrate probable cause that a crime was committed, and that the person to be arrested committed the crime. *E.g., United States v. Brown*, 49 F.3d 1346, 1349 (8th Cir. 1995). The passage of time, of in this case 11 months, does not materially affect Sergeant Robbins' and Detective Adams' knowledge that Sanchez had committed a felony. On November 26, 2014, they had probable cause that Sanchez committed a felony. They still had the same probable cause 11 months later.

Second, law enforcement had probable cause to search Sanchez's vehicle as a result of the reliable alert of a properly trained K-9. *See Florida v. Harris*, 1333 S. Ct. 1050 (2013). Sanchez's objection to the search, other than the now-foreclosed argument that it was incident to his unconstitutional arrest, is that law enforcement should have obtained a warrant before searching his vehicle because it was parked at the car wash, and not on a public street. But that fact is simply immaterial for purposes of the Fourth Amendment. It has long been the law that once law enforcement has probable cause to search a vehicle, they may do so without having to obtain a search warrant. *Carroll*, 267 U.S. at 132. This is true not only because the inherent mobility of vehicles poses practical problems for obtaining a warrant in advance of searching, but also because "the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office." *California v. Carney*, 471 U.S. 386, 391 (1985) (quotation omitted) (extending the vehicle exception to mobile-ready motor homes). This is true whether "a vehicle is being used on the highways or if it is readily

capable of such use and is found stationary in a place not regularly used for residential purposes . . . ." *Id.* at 392. Therefore, law enforcement officers on the scene were operating within the confines of the Fourth Amendment when they conducted a warrantless search on Sanchez's vehicle based on probable cause.

Finally, law enforcement's search of the vehicle was also justified under the Fourth Amendment's exception for warrantless vehicle searches conducted incident to arrest. In *Arizona v. Gant*, the Supreme Court held that the Fourth Amendment authorizes warrantless vehicle searches incident to arrest when (i) the arrestee is unsecure and within reaching distance of the passenger compartment at the time of the search or (ii) it is reasonable to believe the vehicle's passenger compartment contains evidence of the offense of arrest. 556 U.S. at 343. In the instant case, the pertinent arrest was not Sanchez's, but his passenger's. While Sanchez was being arrested, his passenger was initially detained, and then was arrested after he admitted to having methamphetamine and a methamphetamine pipe on his person. It was certainly reasonable for the arresting police officers "to believe evidence relevant to the crime of arrest might be found in the vehicle." *Id.* (quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004)) (Scalia, J., concurring in judgment). Therefore, the vehicle search was also justified as a search incident to arrest under *Gant*.

### IV. CONCLUSION

For the reasons discussed herein, Sanchez's arrest and the search of his vehicle both conformed to the requirements of the Fourth Amendment. His Motions to Suppress (Docs. 29, 43) are, therefore, **DENIED**.

**IT IS SO ORDERED** on this ___9th___ day of February, 2016.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE